Good morning. I'm Jonas Kushner. I'm representing the appellant on Schink. Yes. And we're asserting three grounds for reversal on this Social Security Disability Appeal. The first is that the we're alleging that the ALJ did not consider the treating physician opinion evidence accurately. The second is it seems to me you've got some pretty strong arguments that the ALJ failed to articulate good cause for discounting the opinions of whether he considered the applicant's mental impairment bipolar disorder for the residual functioning capacity at step four and that perhaps there's not substantial evidence to support the finding that the mental impairment was not severe. It seemed to me that the bias issue was way. I don't know if you want to spend as much of your time on that. But that's that. I just want to give you an idea of where I'm coming from this morning. I can only speak for myself. Certainly. And thank you. I think the the best way to illustrate the reversible error in that and with respect to the bias issue is this. It's probably you're required under the regs to make or to handle that in an administrative way that you did. Well, your honor, I believe that because we presented it to the Appeals Council when we did you have to notify the ALJ, don't you? Yes, your honor. Well, and here's the reason why. And this is really the basis for our for our argument here and why the district court misapplied the law. And that's this. If you scrutinize the dates, the procedural posture in this case, one month after the ALJ hearing here, the ALJ filed a lawsuit in the Southern District of Florida. This was a month after the hearing. And in that, he sued the agency, his employer, and included in their multiple attachments and specifically some of the attachments included his complaints about the local attorneys that appear before him. But what he did in that is he specifically identified my three clients by their full last name and their first four digits of their Social Security number. And then published in that same document that the attorneys commit fraud and and deceit on the court. That was the basis. Let me ask you this. Let's say that you're right about the errors that the ALJ made about the merits of your client's claim, okay? And let's say then that we reversed and remanded with instructions to the district court to vacate and remand to the commissioner that claim, that application for disability benefits, okay? Could you then raise all the issues about the recusal before the ALJ? Well, to the extent that they involve issues that have arisen since then, couldn't you raise it then? Well, I mean, yes, Your Honor, I believe we could. But at the same time, I don't think that we need to get to that. And here's the... I mean, it seems to me the problem with, you know, I didn't want to get bogged down in this. I was trying to warn you about that. But to the extent that the recusal issues involve issues that you knew about beforehand and you were obliged to raise it with the ALJ then, to the extent that the recusal issues pertain to facts that have occurred since then, in the event that you win, it would seem to me I believe so, Your Honor, and I would try to explain. It was raised to the appeals council and the law in the circuit indicates that that's sufficient if it's raised at the appeals level. And so I believe that was preserved there. And again, it was after the offensive conduct that that started the process. But the point is that I don't think we have to get there. And the reason being... Didn't the ALJ deny the application a second time? He did, Your Honor. And didn't all these disputes between the ALJ and you really arise before then? Well, there were disputes, yes. And didn't all the pertinent disputes arise before the ALJ denied your client's application the second time? No, Your Honor. The disputes were different. And the agency's brief noted that it had nothing to do with the ALJ denying the use of interpreters at the hearings. And that's correct. And that was not the basis for the recusal request here. The recusal request was based on the perception of bias against Mr. Schenck's attorney based on this published document in the Southern District. But again, Your Honor, I don't... All of that's known, though, for the decision on the second time, right? No, Your Honor. This was after the remand hearing. The first hearing was... The first decision was remanded. And then one month after the remand hearing is when this lawsuit was filed in the Southern District Court that specifically identified my clients and, as a result, me. And that was the basis for the recusal. But when that lawsuit's filed, has a decision been made by the ALJ on this one after remand? After the... I was asking about the... I think I can explain. The procedural posture is important. Again, one month after the second ALJ hearing is when the lawsuit was filed. All right. Hearings one day. Are you telling me that the decision after remand was at the end of the hearing immediately or did the decision come later? The decision came over a year after that second hearing. Yes. Okay. And meanwhile... All right. So you have a hearing, then the lawsuit's filed that you're talking about, right? But you still don't have a decision yet from the ALJ, right? Correct. So you could have raised that you could have filed something with the ALJ after the lawsuit before the ALJ made the second decision. Well, Your Honor, I think that... Couldn't you file something? Well, Your Honor, first of all, I think the timing also came into play. Even though he filed his lawsuit a month after the hearing, it wasn't... I wasn't served with any kind of notice of this lawsuit or anything. It became known to me much later in the process. Did it become known to you before the second decision? Before that... Did you become aware of it before that year elapsed? I honestly can't recall, Your Honor, if I knew about the lawsuit before. You've now got three minutes. I warned you. I appreciate that, Your Honor, but I'm going to suggest that we don't have to get to that here. And the reason being is because the district court misapplied the law here in this circuit. The district court said that based on these facts, we have what's at least a risk or an appearance of bias. But they declined to remand it on that basis. And the law in this circuit in our country says that is grounds for remand. That in and of itself, the appearance or the risk. And the agency, they cited numerous cases in their brief where this same exact standard was applied by the district court. And the district court said, well, we're not going to remand it because the decision is otherwise supportive of non-substantial evidence. As Your Honor pointed out, we've already... I don't think we need to address the strength of the arguments that the decision was not based on substantial evidence, but... What I was concerned about was, doesn't the commissioner argue that you waived this issue, that you should have brought it up before the AOJ? Well, they did. They did. And that's what I'm concerned about. Regardless of what the district court said, the commissioner's argument is that you waived it. And I've been trying to figure out whether that's right or not. Well, Your Honor, I think that because it was raised at the appeals council, whether or not they indicated that it wasn't raised in front of the AOJ... Well, I thought their argument for your waiver was the fact that you hadn't raised it before the AOJ. That's their argument, isn't it? Well, it may be. And if it is, they didn't argue that we couldn't raise it at the appeals council, which is when we did. And I think the that is sufficient. And like I said, I don't recall the exact timing of when I found out about the lawsuit and when I actually asked for the recusal. But again, I don't think we have to get to that because the district court is applying the law incorrectly in that regard. And a decision here can clarify that either this risk or the appearance is enough. And I would argue that the they echo the same standard. They argue that we have to show actual bias. And they never asserted that we didn't at least establish this risk or an appearance. And Your Honor, I believe that in and of itself should be the ruling when the case is remanded back down. And I see I'm out of time. Thank you. Mr. Blake. If it pleases the court, my name is Richard Blake. I represent the Commissioner of Social Security. Regarding the bias issue, the problem with Mr. Kushner's case is that, and as the district court found, not simply that there was no possibility or probability of bias. There was no reasonable possibility. The Supreme Court has given us the standard in the McClure case. Did you assert waiver? Do I assert waiver? Yes. Well, I think that's a difficult question. Under the regulation that we cited in our brief that deals with that, the claimant has to bring the issue of bias to the agency's attention at the earliest possibility. Now, you know, that becomes difficult because the question then becomes when did, I mean, Mr. Kushner alleged, I mean, what this has to do with is Judge Butler filed, well, there's a couple of things. There was the disciplinary action, but let's take the lawsuit. Because at some point, Mr. Kushner becomes aware that Judge Butler, and we don't, that's another problem, is we don't know what Judge Butler's opinion of Mr. Kushner is. But let's, for the sake of argument, let's say that Judge Butler doesn't like Mr. Kushner. When did Mr. Kushner become aware of that? Now, Mr. Kushner points to this lawsuit that the, and I have my timeline. Which is well before the LJ renders the second decision. Very well before. The lawsuit was filed. Mr. Blake, can I get back to the question I asked a moment ago that you said was, I think, a complicated one? Do you assert waiver? No, sir, I don't think so. Okay. Well, the reason, and the reason is because he did bring it to the appeals council's attention. Now, the question is, should he have brought it earlier? I mean, he certainly, there was, I mean, my argument. Could he have brought it earlier sounds to me like waiver. That's, I'm trying to pin this down. Do you assert waiver or not? Well, I'm afraid that only Mr. Kushner knows the answer to that question. Because I don't know when Mr. Kushner became aware of the alleged- Okay, so if you're not affirmatively asserting waiver, then did you want to address the substance of the argument that this should be remanded to a different ALJ? Oh, yes, ma'am. Because as I think the district court correctly found, there's, this doesn't meet the standard for a bias finding. Under McClure, under the Supreme Integrity and Honesty in the ALJ, and Mr. Kushner has not presented any evidence to rebut that presumption. And Mr. Kushner has tried to change the standard by citing Calder, you know, the reasonable possibility. But Calder is a new evidence case, not dealing with new evidence to the appeals council or to the district court. This does not trump the Supreme Court's decision. And in fact- I tell you this, I think the ALJ's decision was riddled with error. Riddled with error. I mean, the things the district courts, I mean, the ALJ says to discount the treating physicians, to me, one after another, you go through them one at a time and they do not withstand scrutiny. Am I wrong? Well, yes, sir, I think you are. But even if, let's say you're not. Let's say you're correct and the ALJ erred. Well, that's nothing unusual about that. But that doesn't indicate bias. That doesn't show bias. And nothing Mr. Kushner presents to support his bias claim stands up. So, number one, he doesn't have, he can't meet the standard. What does he have? He has this, he points to the lawsuit. But the lawsuit's not against Mr. Kushner. It's against the agency. And while it may be the fact that it was this underlying complaint- We'll sort out this bias issue since you're not asserting waiver. We don't have a ton of time today. Why don't we start getting to the decision of the ALJ? So, the ALJ, it seemed to me, was wrong to treat these answers to the questionnaires as somehow giving opinions on an issue that's reserved to the commissioner. Well, the question of RFC is reserved to the commissioner. Yeah, but the things that are said in the answers to those questionnaires are just, these are just medical opinion issues, aren't they? Yes, sir. And- They're entitled to do that, right? Yes, sir. Absolutely. I mean, I think what the ALJ was getting at was some of the terminology used in the forms he found to be vague. You're talking about mild and extreme and unable to function. I mean, those are the same terms that were used by Dr. Bursick, whose opinion he did rely on. And unable to function, it seems to me, has a pretty straightforward, common sense meaning. Well, I'm not sure, Your Honor. What does that mean? Does that mean, is that an opinion that person is disabled or unable to work? Because unable to function, if that means the person is unable to work or disabled, that's also an issue that's reserved to the commissioner. But what I'd also point out is, an ALJ found that terminology was vague. That was one reason that he gave. This ALJ gave five reasons for- How do you explain, though? Let's go through them one at a time. Let's start with this first one that you've brought up. How do you explain the fact that exact same terminology was used in the opinion by one of the doctors he relied on? Well, again, I think the doctor in question was a state agency doctor, and he was using a form that we actually use. So it wasn't vague when he used it, but it was vague when the treating physician used it? Well, I think it's- Do you see why that seems to be a problem? Well, yes, ma'am. I do see the concern. Okay. So then what is your second argument on that? The ALJ reviewed the evidence of record from these treating physicians and noted that the opinions were inconsistent with other substantial evidence in the treatment records. Except that he didn't identify what was inconsistent about them. Well, he did note that in June of 2010, Dr. Berdard found that the claimant had good orientation, intact language skills, average intellect, no psychosis, no problem retaining and executing multilayered tasks. Dr. Hernandez in April of 2011- That can be true of a person who's bipolar, right? I mean, that's the nature of the disorder, right? I mean, you're not 100% of the time, you're not totally depressed or on a manic high. I mean, that's the nature of the disorder. Well, sure. But again, there has to be evidence presented that substantiates a 12-month period. But can you pick and choose which pieces you want to rely on? I mean, there were plenty of notes in the doctor's treatment notes that talked about different problems that the applicant had. Well, the ALJ also noted that many of these psychological problems were remedied with medication. So, I mean, yes, it's true. There's also the sporadic nature of the treatment. If you look at the timeline for the medical, you know, you have big gaps in treatment from August of 2009 to June of 2010, from October of 2011 to December of 2013 when there's no treatment. So, again, now don't get me wrong. There is a 12-month period of treatment going on. So, you could, I'm not trying to say that. But I guess what I'm saying is when the ALJ stated multiple reasons. Now, and let me be clear. And I've gone through every one of them and it looks to me like not a one holds up. Well, Your Honor, I mean, the record is what it is. I mean, there is, I mean, there, I mean, you know, I think we've outlined it in our brief. The district court outlined it as well in its decision. I mean, in all fairness, I mean, either substantial evidence supports the reasons or it doesn't. If this court finds that it doesn't. Well, you know, you make the comment about the sporadic nature of the treatment as a reason why not to attach weight to it. How about the occasions when the ALJ gave significant weight to the opinions of Dr. Bernard who met with Schenck only once and Dr. Brissek who never met with him at all? Well, sure, Your Honor. But meanwhile, you're complaining about the sporadic nature of the other treating physicians, but at least they met with them over time. And when they did meet with them, and again, you know, they didn't find disabling limitations in their treatment notes. Now, they did in their opinion, but the, you know, as I said, the district court outlined it. We outlined it in our briefs. The ALJ outlined it in his decision. Again, this is a simple question of whether substantial evidence supports. I mean, we've outlined what we believe the substantial evidence is. If this court disagrees, then, you know, that's the case. You can't just parrot the test and say it is. I mean, you can't just kind of use the buzzword. Oh, no. No, Your Honor. And I don't mean to. And I'm sorry if I'm giving that impression. But I mean, the evidence, I mean, I could, you know, Judge Pryor has gone through the evidence and he doesn't agree with me. But I could go, you know, I could. It's because of just the sort of thing that Judge Moore just raised. He discounts treating physician opinions because of sporadic meetings when those treating physicians saw the patient several times. But then he credits the opinion of a physician who sees him once and one who sees him not even once at all. What am I to make of that? I'm to treat that as substantial evidence? I'm to defer to that? Well, you could use Dr. Hernandez and Dr. Asad's own treatment records to support the ALJ's finding. I mean, I don't want to impose on the court's patients by going through the medical records. But they were documented in the district court decision. They were documented in our brief. But if the court is not satisfied with those records, then, I mean, then we have a disagreement about whether substantial evidence supports or not. You know, one of the things the ALJ stated was that the questionnaires, quote, don't address the category of understanding and memory. Your opponent says, well, that's completely an opposite. What matters is whether his bipolar disorder disables him by affecting his mood and affect, not his cognition or memory. You know, you go through this and one by one, you find those kinds of problems. Isn't that an example of a problem with the ALJ's decision? That he's focused instead on, you're saying he's focused on the wrong area. He says the questionnaires of the treating physicians don't address understanding and memory. So what is what your opponent says? Your opponent says bipolar disorder affects him by his mood and affect, not memory or cognition. I mean, it looks like the ALJ, frankly, just doesn't understand what bipolar disorder is about. Except treating physician Dr. Asad noted that the claim, it could be tangential at times, but he could be redirected to stay on tact. Yeah, in dealing with a professional, that could happen. Well, I don't know. That's not inconsistent with bipolar. Well, all I can say, Your Honor, is that that was one reason the ALJ gave of many. He talked about the treating records. He talked about the daily activities. He talked about the state agency findings. He did talk about the forms and he didn't give a lot of credence to the checkbox forms in this case. We've cited case law from this court and from the Third Circuit that said the same. So, again, we would maintain that the substantial evidence is there. It's in the record. While there might be other evidence that weighs against the ALJ's decision, as long as substantial evidence is there. I mean, he says things like that because the applicant could participate in normal activities of daily living, like walking a dog, watching television, doing a little housework, that that shows that he had better functioning than Assad and Hernandez indicated. That does not follow to me. The fact that he could do those sedentary activities doesn't tell me at all whether he would have the ability to respond appropriately to coworkers or peers, the ability to relate to the general public and maintain socially appropriate behavior, the ability to behave predictably, reliably, and in an emotionally stable manner. All the things that you would expect could be a problem for someone with bipolar disorder. Well, Your Honor, he also, he could cook, clean, shop, pay bills. None of those things require the type of cooperative or interactive skills that working with somebody at a job does. I mean, paying bills, something you do by yourself. You know, walking the dog, something you do by yourself. Watching television, something you do by yourself. How does that, how does that? I'm sorry. Well, certainly driving an automobile. Something you do by yourself. Well, I mean, you do it out on the street. Have to interact with other drivers. Well, it's not really an interpersonal skills kind of skill, is it? I understand. No, yes, ma'am. You're correct. I think you're right about that. So that's kind of the problem, right? Because the evidence he relies on does not, it's not really relevant to, and it doesn't tell us one way or the other whether it's more or less likely that he'll be able to work in an environment with other people and respond to instructions by somebody who's supervising him, things of that nature. Well, I could also just add that the state agency doctor who reviewed the record, and it's true, did not examine the claimant, but did review the medical records, and he offered that opinion. So the ALJ wasn't out there by himself. He was relying on an agency physician who had reviewed the medical records. You can't actually even see how the applicant interacted with other people, including himself. Well, that's correct. State agency doctors don't actually examine. Right. That's my point. Yes, ma'am. Well, thank you, Your Honor. If there's nothing further. Tell me this. Yes, sir. Maybe you're not in a position to answer this question. If so, you can tell me that, and that's fine. But in the event that we think that this needs to be remanded, would Mr. Schenck be able to raise issues about bias with the ALJ then? Well, or is it too late? Oh, no, no. You can raise issues of bias. I mean, again, the standard is it's the earliest opportunity. You know, so if it's remanded back to a new ALJ. No, no. I'm not saying it's remanded back to a new ALJ. It's remanded because this decision is not supported by substantial evidence. And if the panel concludes that this decision was riddled with error, would Mr. Schenck be able then to raise the issue about whether the same ALJ should hear it or not? Or do we need to address that? Well, Your Honor, that is not anything. I don't know how to address that question, Your Honor. Okay, fair enough. I said that might be the case. Yes, sir. Okay, Mr. Kushner. Thank you. Here's why, Your Honor. Your Honors, I believe that this needs to be addressed, the bias issue that you were just asking about. The district court is applying the wrong standard with respect to the bias issue. And this is an opportunity for the court to clarify that. And specifically, they've acknowledged in multiple decisions that there is this appearance or a risk of bias in this situation. And the district court did that here in this decision. It does seem to me that your adversary has said, the commissioner has basically said he's not asserting waiver. So we'll need to figure that out. Well, and I just wanted to address why I thought it was important for this court to at least clarify that, Your Honor. Can you answer Judge Pryor's question in the answer to opposing counsel? Could you, again, assert it if it were remanded? Your Honor, I believe we could. And could you get over, could you overcome this issue at the earliest possible time? Well, at this point, probably not. Not unless we deal with it, is what you're saying. Well, correct, correct. And I think, Your Honors, that, again, that's exactly why this needs to be clarified to the district court, because that's the standard that they applied. So if they're not arguing that I waived, and therefore, essentially, they haven't even contested the fact that there's this risk or an appearance of bias. And the Supreme Court, they have indicated that even that risk or the appearance of bias is enough for reassignment. And this court has reiterated that very same thing. In fact, this court has indicated we don't even have to get to the substantial evidence issues. And even if you could bring it up again, I mean, it almost seems like it would be sort of law of the case at this point with the BIA having already decided it. Yes, Your Honor. That's absolutely. I'm sorry. I'm sorry. The Appeals Council. Yes, that's what I meant. The Appeals Council. I'm sorry. Yes, yes. Well, that's absolutely correct. And just to be candid now that I'm addressing this, this would actually, this would be a second remit. Well, okay. I take that back. If a case is remanded to a judge two times after that, then they reassign the judge anyway. But that doesn't apply here. So I'll disregard that last statement. Unless there's any questions, I have nothing further. Thank you. Okay. We will be in recess until tomorrow.